**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JORGE REYEROS, and JUAN REYEROS, : | |
| : | Civil Action Nos. 10-3020, 10-2907 (SDW) |
| Petitioners, : | |
| : | |
| v. : | **OPINION** |
| : | |
| UNITED STATES OF AMERICA, : | |
| : | October 24, 2011 |
| Respondent. : | |
| : | |

**WIGENTON**, District Judge.

Before the Court are the petitions of Jorge Reyeros ("Jorge") and Juan Reyeros ("Juan") (collectively "Petitioners") to vacate, set aside, or correct their sentences pursuant to 28 U.S.C. § 2255 (the "Petitions"), as well as a motion to consolidate the Petitions and a motion by Juan to strike the response brief of the United States Government ("Government" or "Respondent").

The Court, having considered the parties' submissions, decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78. Petitioners' motion to consolidate the Petitions is **GRANTED**, and as such, both Petitions will be addressed below.[1] For the reasons set forth below, the Court **DENIES** Petitioner Juan's motion to strike the Government's response brief and **DENIES** the Petitions.

---

[1] The Government did not object to the consolidation as indicated by letter dated May 12, 2011. (Docket Entry #13).

## FACTUAL AND PROCEDURAL BACKGROUND

On August 20, 2004, a Grand Jury returned a six-count[2] Second Superseding Indictment against Petitioners, Hernan Uribe ("Uribe"), and Rafael Garravito-Garcia ("Garravito").   Count 5 charged Petitioners, Uribe, and Garravito with conspiring between March and November of 1999 to import from Ecuador 400 to 500 kilograms of cocaine concealed in cargo containers in violation of 21 U.S.C. § 963.   Count 6 charged Jorge with unauthorized access to a United States Customs Service ("Customs") computer in violation of 18 U.S.C. § 1030(a)(2)(B) and (c)(2)(B)(ii).   Jorge, an inspector for Customs, sought to further the conspiracy by accessing a Customs computer to determine whether a company could be used to smuggle cocaine.   Correspondingly, Juan, Uribe and Garravito were charged with aiding and abetting the unauthorized access of a Customs computer in violation of the same statutes.

In September 2004, the jury trial against Petitioners began before the Honorable William G. Bassler, U.S.D.J. (now retired).   The other individuals indicted with Petitioners were not tried at that time.   Garravito was never arrested and Uribe was imprisoned in Colombia after being arrested on narcotics-related charges.   However, Customs agents traveled to Colombia in 2002 to interview Uribe about his relationship with Petitioners.

Uribe was eventually extradited to the United States during Petitioners' trial.   He testified that in 1999, Juan asked for his assistance in identifying an American company that could be used to smuggle 400 to 500 kilograms of cocaine.   Uribe further testified that Juan told him that Jorge could use his position as a Customs inspector to ensure the

---

[2] Only Counts 5 and 6 will be discussed.  Jorge alone was charged in Counts 1–4, which were related to two schemes to smuggle cocaine from Trinidad in 1997; however, he was acquitted of these charges.

successful importation of the cocaine.  To find a company that could be used to smuggle the cocaine, Uribe contacted Garravito for assistance, who in turn contacted James Lagroterria ("Lagroterria"), an informant for Customs and the Drug Enforcement Administration ("DEA").  Garravito introduced Lagroterria to Uribe.  Lagroterria was told that the conspirators were working with a Customs inspector who would find out whether the company Lagroterria identified was flagged by Customs because it had previously imported contraband.  Lagroterria identified TJ Imports Produce ("TJ Imports"), which was a fictitious company that was created and entered into Customs' database by Customs and DEA agents.  At trial, the Government presented Jorge's "playbacks" from his Customs computer searches, which included searches specifically for TJ Imports.

The jury convicted Petitioners of Counts 5 and 6. Subsequently, the district court denied Petitioners' post-trial motions.   Jorge was sentenced to 292 months of imprisonment on Count 5 and 60 months of imprisonment on Count 6, to be served concurrently.  Juan was sentenced to 235 months of imprisonment on Count 5 and 60 months of imprisonment on Count 6, also to be served concurrently.

Petitioners appealed their sentences to the Third Circuit, which denied their appeal and affirmed the sentences imposed by the district court.   *United States v. Reyeros*, 537 F.3d 270 (3d Cir. 2008), *cert. denied*, 129 S. Ct. 2780 (2009).

Petitioners timely filed their present Petitions.  Petitioners bring joint and separate claims of ineffective assistance of counsel.  Additionally, Jorge claims: (1) that his right to due process was violated by an impermissible broadening of the scope of

18 U.S.C. § 1030(a)(2)(B), and (2) that the Government offered insufficient evidence to support his conviction for conspiracy to import cocaine at trial.

## LEGAL STANDARD FOR 28 U.S.C. § 2255 PETITIONS

A district court, in considering a 28 U.S.C. § 2255 petition, must "accept the truth of the [petitioner's] factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Gov't of V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)) (internal quotation marks omitted). If the 28 U.S.C. § 2255 petition and the underlying case record show conclusively that the petitioner is not entitled to relief, the district court is not required to hold an evidentiary hearing. *Forte*, 865 F.2d at 62. Finally, under Rule 4(b) of the Rules Governing § 2255 Proceedings: "If it plainly appears from the [petition], any attached exhibits, and the record of prior proceedings that the [petitioner] is not entitled to relief, the judge must dismiss the [petition] and direct the clerk to notify the [petitioner]."

## ANALYSIS

### I. *Motion to Strike*

Juan contends that the Government's March 11, 2011 brief should be stricken pursuant to L. Civ. R. 7.1(d)(6) because it is a sur-reply that was filed without permission. (Juan's Mot. to Strike Br. 1.) As the Government correctly points out, Jorge's reply brief, which Juan adopts, was filed about six weeks after the Government filed the March 11, 2011 response brief. Consequently, both Jorge and Juan "had the benefit of the government's responses" to issues Petitioners raise. (Resp't Reply Br. 1.) Additionally, Petitioners' reply brief does respond to the arguments the Government

raises in its response brief.  Therefore, Juan is asking this Court to strike the very brief he responds to.  Juan cannot have his cake and eat it too.  The motion to strike is denied.

II.   *Motion to Vacate*

A.   *Ineffective Assistance of Counsel*

Together, Petitioners argue that defense counsel was ineffective because counsel failed: (1) to investigate and present exculpatory testimony of other Customs officials who accessed TJ Imports information; (2) to challenge the use of evidence derived from a wiretap pursuant to 18 U.S.C. § 2518(9); (3) to object to Uribe meeting *ex parte* with the sentencing judge; and (4) to obtain documents, either through the Colombian government directly or by establishing joint venture between the United States and Colombia, that could have been used to impeach Uribe.  Jorge and Juan also separately claim that defense counsel nullified their right to testify and was thus ineffective.  Further, Juan claims that his appellate counsel was ineffective for failing to argue on appeal that he was denied the right to allocute at sentencing.

Section 2255 petitioners have the burden of proof to demonstrate ineffective assistance of counsel.  *United States v. Baynes,* 622 F.2d 66, 69 (3d Cir. 1980).  A defendant is denied the right to effective assistance of counsel when: (1) his attorney's performance falls below "an objective standard of reasonableness," and (2) there is a "reasonable probability" that such ineffectiveness prejudiced the outcome at trial. *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984).

The first prong ("the performance prong") requires a petitioner to identify those "acts or omissions" by counsel that were outside the range of professionally competent assistance.  *Id*. at 690.  A court must be highly deferential when assessing an attorney's

performance and, as such, a petitioner must overcome a strong presumption that the challenged action "might be considered sound trial strategy." *Id*. at 689.

The second prong ("the prejudice prong") requires a petitioner to show a reasonable probability that, but for counsel's professional incompetence, the outcome of the proceeding would have been different. *Id*. at 694. A reasonable probability of prejudice is one "sufficient to undermine confidence in the outcome." *Id*.

In a criminal case, the authority to make certain decisions regarding defense strategy is divided between the defendant and his or her attorney. *Gov't of V.I. v. Weatherwax,* 77 F.3d 1425, 1433 (3d Cir. 1996). The defendant has the ultimate authority to decide whether to plead guilty, waive the right to a jury, testify or appeal. *Jones v. Barnes,* 463 U.S. 745, 751 (1983) (describing such decisions as "fundamental"). Nevertheless, the daily conduct of the defense is the responsibility of the attorney, who has "the immediate - and ultimate - responsibility of deciding if and when to object, which witnesses, if any, to call, and what defenses to develop." *Wainwright v. Sykes,* 433 U.S. 72, 93 (1977) (Burger, C.J., concurring). This can include the selection of witnesses and experts, trial arguments, summations and the filing of motions. *Weatherwax*, 77 F.3d at 1434.

To succeed with claims of ineffective assistance on a § 2255 petition, a petitioner must establish, for example, that the motion that counsel failed to file had at least some "potential for success." *United States v. Fulford,* 825 F.2d 3, 9 (3d Cir. 1987). That is, the motion must have had a basis in law and fact. *Id.* Furthermore, if counsel's tactical "decision has a rational basis, a court is without authority to second-guess counsel's judgment call." *Weatherwax,* 77 F.3d at 1436.

**_Petitioners' Joint Claims of Ineffective Assistance of Counsel_**

First, Petitioners claim that trial counsel was ineffective for failing to investigate and present exculpatory testimony of other Customs officials that accessed information about TJ Imports. Petitioners argue that if such testimony had been presented, it would have shown that Jorge accessed the information for reasons similar to that of other Customs officials and not in furtherance of an unlawful scheme to import cocaine. This argument must fail.

Even if Petitioners' counsel performed what Petitioners would consider a more thorough investigation, it is not clear that additional evidence would have been presented at trial. Further, even if additional investigation would have led Petitioners' counsel to present testimony from some Customs officials at trial,[3] there is not a reasonable probability that the outcome at trial would have been different if Petitioners' counsel had presented such testimony. Moreover, the Government presented a substantial portion of the testimony of other Customs officials who accessed TJ Imports' information at trial. Among those who testified were Customs officials Theresa Pollitt and Arlene Witiw as well as Intelligence Analyst Michael Grimaldi who had conducted interviews with every

---

[3] Still, the Court notes that Petitioners' argument that counsel was ineffective for failing to present the testimony of other Customs officials is weak as the cases they cite to support this argument are distinguishable from the matter at hand. (_See_ Jorge's Br. 11–12.) In the two cases Petitioners cite, _Raygoza v. Hulick_, 474 F.3d 958 (7th Cir. 2007) (a first-degree murder case in which counsel did not seriously investigate defendant's alibi and called only one of ten available alibi witnesses at trial) and _Ramonez v. Berghuis_, 490 F.3d 482 (6th Cir. 2007) (a third-degree home invasion case in which counsel did not interview three witnesses who allegedly saw defendant being invited into his ex-girlfriend's house instead of forcing his way in), counsel failed to present testimony that would have _directly_ called into question crucial testimony against the defendant. That is not the case here; rather, the potential testimony would probe into Jorge's possible purpose for accessing the information.

Customs official who accessed TJ Imports' information.  (Resp't Br. 13, 12.) Petitioners' counsel was also given the opportunity to cross-examine these witnesses.

Petitioners now name several additional Customs officials that they claim counsel should have called.  (Jorge's Br. 11.)  Yet, there is no reason to think the trial's outcome would have been altered in any way.  As the Third Circuit stated, the evidence against Jorge was "damning enough." *Reyeros*, 537 F.3d at 278.  Calling additional Customs officials as witnesses would not negate the testimony presented at trial regarding Jorge's role in conspiring to import cocaine.  The other testimony and evidence presented to show Jorge's involvement is clearly much more significant than the testimony of the other Customs officials.[4]

Second, Petitioners claim that defense counsel was ineffective because he failed to challenge the use of evidence derived from a wiretap pursuant to 18 U.S.C. § 2518(9).  However, Petitioners had no standing to challenge wiretap evidence used at their trial.  Accordingly, counsel cannot be considered ineffective for failing to make such a challenge.

18 U.S.C. § 2518(9) states:

> The contents of any wire, oral, or electronic communication intercepted pursuant to this chapter or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding . . . unless each party . . . has been furnished with a copy of the court order, and accompanying

---

[4] Petitioners were unable to point to any specific testimony from a Customs official that would have been exculpatory until Jorge submitted his Reply Brief.  Attached to Jorge's Reply Brief was the Affidavit of Nilsa Reyeros ("Nilsa"), Jorge's wife who is also a Customs official.  Nilsa claimed that she recently contacted a Customs official, Carol Gorman, who worked with Jorge.  Nilsa further claimed that Gorman told her that "it could have been possible" that she requested that Jorge look at TJ Imports' information and that, as a result, Jorge accessed the information pursuant to her request rather than to further an unlawful scheme to import cocaine.  (Jorge's Reply Br. Ex. A, Nilsa Aff. ¶ 10.)  This potential precarious testimony, however, does little to counteract the evidence described above.

> application, under which the interception was authorized or
> approved.

"Section 2518(9) is . . . designed to give [a] party an opportunity to make a pre-trial motion to suppress." *United States v. Manuszak*, 438 F. Supp. 613, 621 (E.D. Pa. 1977) (quoting S. Rep. No. 90-1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2194–95) (internal quotations omitted).   However, to make such a motion, a party must have standing in accordance with 18 U.S.C. § 2518(10)(a).   Section 2518(10)(a) states that only an "aggrieved person in [] [a] trial, hearing or proceeding in or before any court . . . may move to suppress the contents of . . . communication[s] intercepted . . . ." *Id*.   Section 2510(11) defines an "aggrieved person" as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11).   As the Supreme Court stated,

> [i]n order to qualify as a person aggrieved by an unlawful
> search and seizure one must have been a victim of a search
> or seizure, one against whom the search was directed, as
> distinguished from one who claims prejudice only through
> the use of evidence gathered as a consequence of a search
> or seizure directed at someone else.

*Alderman v. United States*, 394 U.S. 165, 173 (1969) (quoting *Jones v. United States*, 362 U.S. 257, 261 (1960)) (internal quotation marks omitted).

Although Petitioners endeavored to establish that evidence presented at trial was derived from a wiretap, Petitioners never offer a basis upon which they had standing to make a motion to suppress.   (Jorge's Br. 14.)   Indeed, Petitioners did not have standing because they were not parties to the intercepted wire.   Additionally, neither of them was the wiretap's target.   Therefore, the Court finds that because Petitioners did not to have

standing, their claim must fail. Certainly, if Petitioners had no standing to make a motion for suppression, counsel cannot be deemed ineffective for failing to make such a motion.

Third, Petitioners claim that trial counsel was ineffective for consenting to Uribe meeting *ex parte* with the sentencing judge. The Court disagrees.

Before sentencing, Petitioners moved for downward departures. Petitioners argued that downward departures were warranted considering that they did not successfully import cocaine into the United States. (Resp't Br. 28.) The Government opposed the motion and offered to present Uribe's testimony at the sentencing to show that, although Petitioners' efforts to import cocaine were stymied on this occasion, both had previously assisted in the importation of "tens of thousands of kilograms" of cocaine into the United States.[5] (*Id.* at 29.) However, the Government requested that Uribe not be required to name other individuals involved in the importation of cocaine on those past occasions, particularly the suppliers who were considered "notoriously dangerous and vengeful." (*Id.* at 33.) The Government's request became a point of contention; Petitioners argued that Uribe's cross-examination should not be limited at sentencing because this would "deny[] the Court [and defense] the fundamental right to consider the fullest range of relevant evidence . . . and to challenge . . . [] [Uribe's] reliability." (*Id.*) (alteration in original) (citation and internal quotation marks omitted). This dispute was ultimately resolved in an off the record conference with the sentencing judge, in which the parties agreed[6] that the judge would meet *ex parte* with Uribe to determine whether

---

[5] Because Uribe had not yet been extradited at the time of the Second Superseding Indictment, his testimony was not available to the Government at the time of the Second Superseding Indictment; thus Petitioners were not charged in relation to their alleged past efforts to import cocaine. (*Id.* at 29.)

[6] Although Petitioners and the Government agreed that Uribe would meet *ex parte* with the sentencing judge in the off the record conference, Juan's counsel later objected to this meeting after the court imposed the sentence. Juan's counsel stated, "I forgot earlier after the *ex parte* meeting with Mr. Uribe to register my objection." *Reyeros*, 537 F.3d at 288 (citation and internal quotation marks omitted). In response, the

his safety concerns justified limiting cross-examination.  Sometime after the *ex parte* meeting, but before the sentencing hearing, Petitioners decided to withdraw their motions for downward departures.  Upon informing the sentencing judge of their decision to withdraw the motions, the judge stated that he then did "not need to hear from Uribe, [as] Uribe's testimony would only have been relevant to the defense motions for downward departure, which had been withdrawn."  *Reyeros*, 537 F.3d at 288.

In relation to Petitioners' ineffective assistance of counsel claim, Petitioners argue that: (1) defense counsel's consent to the sentencing judge meeting *ex parte* with a key witness prior to sentencing amounted to "legal suicide," placing counsel's conduct far below an objective standard of reasonableness and (2) there is a reasonable probability that the judge's sentencing was influenced by his *ex parte* meeting with the witness. (Jorge's Br. 21–22.)  These arguments are not persuasive and lose force, however, when placed within the specific context described above.

Defense counsel's conduct was reasonable under the circumstances.  The scope and purpose of the *ex parte* meeting, which defense counsel consented to, was narrow: to give the sentencing judge an opportunity to determine the validity of Uribe's safety concerns.  Petitioner comes forward with general arguments about the evils of *ex parte* communications.  However, these general propositions do not justify a finding that *ex parte* communications were improper here because the scope of the communication was

---

sentencing judge stated, "Where have you been? . . . I never heard anything about this. . . . I didn't have a Court Reporter in there which reflects my trust in counsel.  And then to come out here now and have defense counsel tell me that they object to my *ex parte* proceeding. . . . I never heard a single objection about that."  *Id.* at 288–89.  The Third Circuit held that Juan's counsel had waived any objection he may have had to the *ex parte* meeting considering he "played a direct role in developing how the [judge's] discussion with Uribe would take place."  *Id.* at 289.  Additionally, the Third Circuit made its displeasure with the tactics of Juan's counsel known, adding, "[w]e share the District Court's distress at gamesmanship so blatant."  *Id.*  This Court recounts this set of events to illustrate that Petitioners and the Government are properly considered to have been in agreement that the sentencing judge should have met with Uribe before this meeting occurred, despite Juan's counsel's later objection to the *ex parte* meeting.

narrow.  Further, there is nothing before this Court that suggests that anything other than Uribe's safety concerns were discussed during the meeting

Even if counsel's consent to an *ex parte* meeting did not satisfy an objective standard of reasonableness there is no indication that the Petitioners' sentences were influenced by the *ex parte* communication.  Indeed, the record specifically suggests otherwise, because after the motions for downward departure were withdrawn the judge said it was unnecessary for Uribe to testify at the sentencing hearing.  Petitioners argue that because Uribe "appear[ed] in chambers, alone, with the judge", Petitioners and this Court are precluded, "from truly having any opportunity to learn what occurred" during Uribe's conversation with the sentencing judge.  (Jorge's Br. 21.)  However, Petitioners "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  Speculation that Uribe may have "discuss[ed] uncharged misconduct with doubtful liability" that possibly could have influenced the sentencing judge is not sufficient. (Jorge's Br. 18.)  Thus, this Court cannot find "reasonable probability" that trial counsel's conduct with respect to this matter changed or undermined the outcome.

Next, Petitioners claim that counsel was ineffective for not obtaining certain documents that could have been used to impeach Uribe.  Petitioners claim defense counsel could have obtained these documents through either: (1) proving the existence of a joint investigation between the United States and Colombia, or (2) obtaining the documents directly from the Colombian government.

Petitioners argue that defense counsel was ineffective because he failed to establish, through the use of available evidence, a joint investigation between the United States and Colombia. If counsel had succeeded in establishing a joint investigation, as in *United States v. Risha*, 445 F.3d 298 (3d Cir. 2006), the Government may have been obligated to obtain information on Uribe's criminal history from Colombian authorities and disclose that information to the defense. Petitioners argue that such documents could have been used to impeach Uribe's credibility.

Under *Risha*, when a federal prosecutor works with state agents in the investigation and prosecution of a case, "evidence possessed by state agents may be constructively possessed by a federal prosecutor such that the prosecutor has a duty to obtain that evidence and disclose it to the defense." *Reyeros*, 537 F.3d at 281 (citing *Risha*, 445 F.3d at 303–06). Similarly, such "cross-jurisdiction constructive knowledge" may be imputed to a federal prosecutor if the prosecutor works with foreign authorities in the investigation and prosecution of a case. *Reyeros*, 537 F.3d at 281–83. For such "cross-jurisdiction constructive knowledge" to be imputed in either scenario, one of the factors to be considered is "the extent to which state [or foreign] and federal governments are part of a 'team,' are participating in a 'joint investigation' or are sharing resources." *Risha*, 445 F.3d at 304. Accordingly, counsel had to establish that the United States and Colombia participated in a joint investigation of Uribe's knowledge of an unlawful scheme to import cocaine into the United States in which Petitioners were involved.

The Third Circuit has previously concluded that "[t]here was no joint investigation . . . [and] there is no indication that the [United States and Colombian] governments shared any investigative resources whatsoever." *Reyeros*, 537 F.3d at 283.

13

The Third Circuit found a letter Uribe sent in July 2004 to a Colombian Magistrate offered by the defense insufficient to demonstrate a joint investigation.  In reference to the letter, the Third Circuit stated, "[t]he relevant question . . . [is] whether the Colombian government was engaged in a cooperative investigation with the United States government.  Uribe's letter does not suggest that it was."  *Id.* at 284.

Petitioners now argue that counsel should have obtained and used a second letter, one written by Uribe in May 2004 to the Attorney General of Colombia, to establish a joint investigation.  Counsel's failure to do so, Petitioners argue, amounts to ineffective assistance of counsel.  Yet, Petitioners' argument has no merit because they cannot satisfy the prejudice prong of the *Strickland* test.  The Third Circuit also addressed Uribe's May 2004 letter in its opinion, stating it "is strikingly similar to Uribe's July 2004 letter."  *Id.* at 284.  As the May 2004 letter offered no new evidence to demonstrate a joint investigation, Petitioners suffered no prejudice when counsel did not obtain and present the letter at trial.

Petitioners also claim that defense counsel was ineffective by failing to obtain the following documents from the Colombian Government that could have been used to impeach Uribe: 1) Uribe's May 2004 letter,[7] and 2) certain documents in Colombia's criminal prosecution file on Uribe.  This Court disagrees.

In *Strickland*, the Supreme Court stated:

> [I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A

---

[7] Petitioners' argument that counsel was ineffective for not obtaining Uribe's May 2004 letter will not be addressed further.  As previously stated, this letter was "strikingly similar" to the July 2004 letter, which was in counsel's possession at the time of trial.  As the May 2004 letter would have offered no new evidence helpful to Petitioners' defense, Petitioners were not prejudiced by counsel not obtaining or presenting the letter.

> fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Strickland*, 466 U.S. at 689 (citations omitted).  In preparing for trial, counsel traveled to Colombia to interview Uribe even though it was unclear whether he would testify at trial. That counsel did not also obtain all documentation related to Uribe's criminal history while in Colombia for its potential use in any cross-examination of Uribe does not render his assistance ineffective.  Indeed, the Court finds that counsel's traveling to Colombia to interview Uribe reflects reasonable conduct and assistance.

This Court notes that the documents in the criminal prosecution file Petitioners[8] now present have questionable impeachment value. Although Petitioners claim that the documents contain statements by Uribe in which he lies, under oath, about his criminal history, (Jorge's Br. 26), the Court has no way to verify this since the documents are presented in Spanish.  *See United States v. Rivera-Rosario*, 300 F.3d 1, 5–7 (1st Cir. 2002) (stating that all foreign language documents must be translated into English before a court can consider them as evidence).  Accordingly, the Court cannot conclude that the documents counsel failed to obtain while in Colombia would have in any way caused "the result of the proceeding [to] have been different."  *Strickland*, 466 U.S. at 694.

***Petitioners' Separate Claims of Ineffective Assistance of Counsel***

**A.** <u>*Right to Testify*</u>

Petitioners separately claim that their respective counsels nullified their right to testify.  This Court finds that neither Petitioner has come forward with adequate evidence to substantiate his claim.

---

[8] (*See* Jorge's Br. Ex. C.)

"It is well established that the right of a defendant to testify on his or her behalf at his or her own criminal trial is rooted in the Constitution." *United States v. Pennycooke*, 65 F.3d 9, 10 (3d Cir. 1995) (citing *Rock v. Arkansas*, 483 U.S. 44, 49–53 (1987)).  To deny a defendant the opportunity to testify against his or her wishes amounts to ineffective assistance of counsel.  *Pennycooke*, 65 F.3d at 13.  The decision of whether the defendant testifies "is an important part of trial strategy", but the ultimate decision lies with the client, who may resolve to testify against counsel's better judgment.  *Id. at* 11.

The Third Circuit has indicated that there is a presumption that counsel and the defendant have discussed the defendant's right to testify and the advantages and disadvantages of doing so.  *Id*. at 12.  Further, without evidence suggesting otherwise, a defendant who does not testify at trial is presumed to have voluntarily waived his right to testify.  *Id*. at 11–12; *see also United States v. Leggett*, 162 F.3d 237, 248 (3d Cir. 1998).

Jorge argues that counsel "effectively nullif[ied] [his] right to testify" despite his "repeatedly ask[ing]" to do so.[9]  (Jorge's Br. 33.)  While this Court does not take this charge lightly, Jorge has not brought forward sufficient evidence to support his claim.  Here, Jorge's "unsworn, unsupported allegations" contained in his brief "do not give rise to a right to a hearing."  *Brown v. United States*, 45 Fed. Appx. 92, 95 (3d Cir. 2002) (citing *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 n.12 (3d Cir. 1991)).

Unlike Jorge, Juan brings forth a sworn statement, in the form of an affidavit, to support his claim that counsel nullified his right to testify. However, Juan's affidavit proves counterproductive to his claim: the affidavit demonstrates that rather than

---

[9] Juan makes this same argument: "[Juan] repeatedly asked trial counsel to permit him to testify.  Counsel repeatedly told him no, effectively nullifying [his] right to testify."  (Juan's Br. 37.)

informing Juan that he could not testify, counsel advised him that it was not in his interest to do so.  (*See* Juan's Br. Ex. E, ¶¶ 2–3 (counsel "advised me that there was no way I could take the stand due to the fact that I could not properly answer any questions that may be asked of me . . . [counsel stated] it was not a good idea, me taking the stand.").)  Accordingly, Juan's claim similarly fails.

Additionally, Juan brings a claim for ineffective assistance of appellate counsel, arguing that appellate counsel should have asserted that he was denied the right to allocute at sentencing.   Although the Government argues that Juan's claim is procedurally barred at this juncture, (Resp't Br. 60–63), the Court need not address this argument as Juan's claim fails substantively.

Under the Federal Rules of Criminal Procedure, "[b]efore imposing sentence, the court must . . . *address the defendant personally* in order to permit the defendant to speak or present any information to mitigate the sentence."  Fed. R. Crim. P. 32(i)(4)(A)(ii) (emphasis added).  At Juan's sentencing, the judge did not address him personally to inquire whether he wished to speak.  Instead, the judge asked Juan's counsel: "Does your client [Juan] wish to address the court?," to which counsel responded, "No, your Honor, [h]e does appreciate [t]he opportunity to do so but Mr. Reyeros respectfully declines that opportunity."  (Juan's Br. 34.)  Counsel did not alert the judge of his failure to address Juan personally, nor did appellate counsel raise this issue along with the seven others he argued on appeal.

Juan now claims that appellate counsel was ineffective for not raising this issue. Juan faces a heavy burden as the Third Circuit has stressed the broad discretion given to appellate counsel in selecting issues to argue on appeal:

> [T]here is no duty to raise every possible claim.   An
> exercise of professional judgment is required.   Appealing
> losing issues runs the risk of burying good arguments . . . in
> a verbal mound made up of strong and weak
> contentions. . . . [T]he process of winnowing out weaker
> arguments on appeal and focusing on those more likely to
> prevail, far from being evidence of incompetence, is the
> hallmark of effective appellate advocacy.

*Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (internal quotation marks and citations omitted).

Given the broad discretion permitted to appellate counsel, this Court finds that appellate counsel's conduct did not fall below an objective standard of reasonableness. By all indications, appellate counsel selected the seven issues he felt would most benefit Juan on appeal. Additionally, were Juan to prevail on this issue on appeal, he would have been resentenced; yet, the Court has no reason to believe that, if this was the case, Juan would even choose to allocute at resentencing. Set in this context, appellate counsel's conduct was patently reasonable as succeeding on this claim would have derived his client little or no benefit.

Thus, the Court finds that Juan's claim for ineffective assistance of appellate counsel must fail because Juan has not demonstrated that appellate counsel's conduct fell below an objective standard of reasonableness. Consequently, the Court need not address the second prong, "the prejudice prong," necessary to succeed on a claim for ineffective assistance of counsel.

B.   *Jorge's Claim that the Scope of 18 U.S.C § 1030(a)(2)(B) was Impermissibly Broadened*

Jorge argues that his conviction under 18 U.S.C § 1030(a)(2)(B) broadened the scope of criminal liability under the statute, infringing on his right to due process as well

as opening the door to "subject[ing] countless public employees . . . to prosecution on the slimmest of reeds, arbitrary and subjective in nature." (Jorge's Br. 38–39.)  However, Jorge's conviction under § 1030(a)(2)(B) leaves the statute's scope unaltered; his conviction is consistent with the prevailing understanding of the type of conduct that is criminalized under the statute.

Section 1030(a)(2)(B) states that "[w]hoever intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any department or agency of the United States" commits a federal crime. 18 U.S.C. § 1030(a)(2)(B).  Under the statute, "exceeds authorized access" refers to the act of "access[ing] a computer with authorization and to us[ing] such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6).

Jorge argues that the Government improperly relied on his purpose for accessing information about TJ Imports to support his conviction under 18 U.S.C. § 1030(a)(2)(B). (Jorge Br. 36–37.)  Jorge relies on *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009) in making this argument.  In *Brekka*, the Ninth Circuit concluded that an employee's purpose for accessing certain information, whether the employee's mental state was one of loyalty or disloyalty to the employer, is not the determinative factor in finding that an employee violated § 1030(a)(2).  *Brekka*, 581 F.3d at 1134.  The Ninth Circuit stated that the determinative factor is whether the employee violated "employer-placed limits on accessing information stored on a computer."  *Id*. at 1135.  The Third Circuit has not explicitly adopted the Ninth Circuit's position, but multiple district courts

throughout the Third Circuit's jurisdiction have adopted *Brekka*'s reasoning.[10]   *See Integrated Waste Solutions, Inc. v. Goverdhanam*, No. 10-2155, 2010 U.S. Dist. LEXIS 127192, at *23 (E.D. Pa. Nov. 30, 2010) ("Though the Third Circuit has yet to address the meaning of exceeds authorized access, courts in this district have held, in the employer-employee context, that an employee who may access a computer by the terms of his employment is 'authorized' to use that computer for purposes of . . . [§ 1030(a)(2)] even if his purpose in doing so is to misuse or misappropriate the employer's information.") (citing *Bro-Tech Corp. v Thermax, Inc.*, 651 F. Supp. 2d 378, 407 (E.D. Pa. 2009)) (internal quotation marks omitted).

However, as the Government argues, Jorge's conviction under 18 U.S.C. § 1030(a)(2)(B) did not stem solely from his purpose behind accessing information about TJ Imports, but primarily from the fact that accessing this information was a violation of the limits placed on Customs officials.  In support of this argument, the Government references the Second Superseding Indictment, which states that Customs officials were prohibited from accessing information unless needed for law enforcement purposes or in furtherance of their official duties, and a Customs training manual stating that one could not access information unless it was for a job-related purpose. (Resp't Br. 57–58.)  Jorge was found to have used the database, not in the course of his official duties or for job-related purposes, but in furtherance of a conspiracy to import cocaine.[11] Accordingly, Jorge's conviction does not alter the scope of 18 U.S.C. § 1030(a)(2)(B).

---

[10] *See generally Consulting Prof'l Res., Inc. v. Concise Techs. LLC*, No. 09-1201, 2010 U.S. Dist. LEXIS 32573 (W.D. Pa. Mar. 9, 2010) ("This court likewise declines to construe . . . [§ 1030(a)(2)] by reliance upon agency principles where the defendant's intent governs whether the access was without authorization or exceeded authorized access.").

[11] Jorge's argument that "[a] Customs agent is authorized [to] look at [C]ustoms information pertaining to reported criminal activity; [sic] period" would produce unreasonable results.  (Jorge's Reply Br. 7.)  A Customs agent may not claim that he or she is investigating reported criminal activity when the

C.  *Jorge's Insufficient Evidence Claim*

Jorge asserts that there was insufficient evidence for the jury to find that he agreed to participate in an unlawful scheme to import cocaine.  Jorge argues that, because (1) he set a precondition for his agreement to participate in any unlawful scheme to import cocaine, and (2) this precondition was never met, the evidence did not support his conviction at trial.  In making this argument, Jorge references Uribe's testimony that in April 1999, Juan told him that Jorge "wouldn't work" with a quantity of less than 500 kilograms of cocaine because this "would be too little of a deal."  *Reyeros*, 537 F.3d at 276.

Although the Government argues that Jorge's claim is procedurally barred, (*see* Resp't Br. 60–63), the Court need not address the Government's procedural arguments as Jorge's insufficient evidence claim fails on its merits.  "The burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high."  *United States v. Iglesias*, 535 F.3d 150, 155 (3d Cir. 2008) (quoting *United States v. Lore*, 430 F.3d 190, 203–04 (3d Cir. 2005)) (internal quotation marks omitted).  This Court must "view the evidence in the light most favorable to the government**,** and [] sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (internal quotation marks and citations omitted).  For a conviction of conspiracy to be sustained, "the government must have put forth evidence 'tending to prove that defendant entered into an agreement and knew that the agreement had the specific unlawful purpose

---

investigation is performed in furtherance of a conspiracy to import illegal drugs.  Such an investigation is plainly not within a Custom agent's official duties nor is it pursuant to a job-related purpose.

charged in the indictment.'"[12]  *United States v. Idowu*, 157 F.3d 265, 268 (3d Cir. 1998) (quoting *United States v. Wexler*, 838 F.2d 88, 91 (3d Cir. 1988)).

Here, a rational trier of fact could find, beyond a reasonable doubt, that Jorge agreed to participate in an unlawful scheme to import cocaine.  The evidence establishes multiple instances where Jorge performed or participated in activities that furthered the purpose of the conspiracy.  *See United States v. Aldea*, 174 Fed. Appx. 52, 59 (3d Cir. 2006).  Such instances of participation are demonstrated throughout the record.  Despite Uribe's testimony that Jorge said he would not carry out any scheme to import cocaine if the amount to be smuggled was less than 500 kilograms, there is evidence that Jorge agreed to participate in a scheme to import cocaine and was actively working to achieve its goal.  Such evidence includes, but is not limited to Uribe's testimony that: (1) Juan told him that he (Juan) was working with Jorge, who could use his position to facilitate the importation of cocaine, when Uribe first became involved in the conspiracy; (2) Lagrotteria was told in March 1999 that the conspirators were working with a Customs official; (3) Jorge accessed TJ Imports' information after Lagroterria suggested that the company might be a suitable vehicle for smuggling cocaine; (4) Jorge advised them to ship the cocaine from Ecuador rather than Columbia; and (5) Jorge said he "was going to ensure that Customs would inspect only the containers that did not contain drugs and would let the container with the drugs 'go by.'"  *Reyeros*, 537 F.3d at 275–76.

Jorge characterizes these instances of participation as mere "inchoate discussions not amounting to an agreement."  (Jorge's Reply Br. 19.)  However, this Court finds that

---

[12] Petitioner argued on direct appeal that there was insufficient evidence because he did not know that the object of the conspiracy was the importation of cocaine rather than some other form of contraband; however, the Third Circuit rejected that argument.  *Reyeros*, 537 F.3d at 278–79.  Consequently, Petitioner now challenges only whether there was sufficient evidence to support the jury's finding that he agreed to participate in an unlawful scheme to import cocaine.

the evidence presented at trial was sufficient to allow a rational juror to conclude, beyond a reasonable doubt, that Jorge agreed to participate in an unlawful scheme to import cocaine and was actively working to achieve the scheme's goal.  Accordingly, Jorge's challenge to the sufficiency of the evidence is rejected.

<u>**CONCLUSION**</u>

For the reasons stated above, Petitioners' motion to consolidate the Petitions is granted, Juan's motion to strike the Government's response is denied, and the Petitions are denied.  An appropriate order follows.

<u>s/Susan D. Wigenton, U.S.D.J.</u>

cc:  Madeline Cox Arleo, U.S.M.J.